SHAYLA R. MYERS (SBN 264054)
MATTHEW G. CLARK (SBN 233736)
CLAUDIA MENJIVAR (SBN 291981)
**LEGAL AID FOUNDATION OF LOS ANGELES**
7000 S. Broadway
Los Angeles, CA 90003
Tel: 213 640-3831
Fax: 213 640-3988
E: smyers@lafla.org
E: mclark@lafla.org
E: cmenjivar@lafla.org

*Counsel for Plaintiff Unión Popular de Vendedores Ambulantes*

(Additional counsel listed on following page)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| AURELIANO SANTIAGO, an individual; WENDY PULUC, an individual; and UNIÓN POPULAR DE VENDEDORES AMBULANTES, an unincorporated association,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES, FASHION DISTRICT BUSINESS IMPROVEMENT DISTRICT, DOWNTOWN LOS ANGELES PROPERTY OWNERS ASSOCIATION, INC., and OFFICER LINTON in her individual and official capacity,<br><br>Defendants. | Case No. 2:15-cv-08444 BRO-E<br><br>**FIRST AMENDED COMPLAINT: CIVIL RIGHTS**<br><br>**42 U.S.C. § 1983 AND FOURTH, FIFTH AND FOURTEENTH AMENDMENTS**<br><br>**CALIFORNIA CONSTITUTION ARTICLE I, §§ 7 AND 13**<br><br>**CALIFORNIA CIVIL CODE §§ 52, 52.1** |

MICHAEL KAUFMAN (SBN 254575)
JENNIFER L. PASQUARELLA (SBN 263241)
PETER BIBRING (SBN 223981)
**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**
1313 West 8th Street
Los Angeles, California 90017
Telephone: (213) 977-5232
Facsimile: (213) 417-2232
E: mkaufman@aclusocal.org
E: jpasquarella@aclusocal.org
E: pbibring@aclusocal.org

CAROL A. SOBEL (SBN 84483)**NATIONAL LAWYERS GUILD – LA**
3110 Main Street, Suite 210
Santa Monica, CA 90405
Tel: 310 393 3055
Fax: 310 451-3858
E: carolsobel@aol.com
E. mullen.colleen1@gmail.com

CYNTHIA ANDERSON-BARKER (SBN 175764)
**NATIONAL LAWYERS GUILD – LA**
3435 Wilshire Blvd # 2910
Los Angeles, CA 90010
Tel: 213 381-3246
Fax: 213 252-0091
E: cablaw@hotmail.com

PAUL L. HOFFMAN (SBN 71244)
CATHERINE SWEETSER (SBN 271142)
**SCHONBRUN, SEPLOW, HARRIS & HOFFMAN**
723 Ocean Front Walk
Venice, California 90291
Tel: 310 396-0731
Fax: 310 399-7040
E. hoffpaul@aol.com
E. catherine.sdshhh@gmail.com

## JURISDICTION AND VENUE

1. This is an action for injunctive relief and damages pursuant to 42 U.S.C. § 1983, based upon ongoing violations by the defendants of the rights secured to plaintiffs by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution. Jurisdiction exists based on 28 U.S.C. §§ 1331 and 1343 in that this case is brought pursuant to 42 U.S.C. § 1983 and raises questions of federal constitutional law under the Fourth, Fifth, and Fourteenth Amendments. The court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in the Central District in that the events and conduct complained of in this action occurred in the Central District.

## PRELIMINARY STATEMENT

3. Plaintiffs, two individual street vendors and an organization representing the interests of street vendors, bring this action against the City of Los Angeles (City), an individual officer in the Los Angeles Police Department (LAPD), and the Fashion District Business Improvement District (BID) to enjoin the City and BID from illegally seizing and destroying their property.

4. The LAPD and the Fashion District BID, working together, have a policy, custom, and practice of seizing and destroying the property of street vendors who sell food and other items to the thousands of people that frequent the streets of the Fashion District in Downtown Los Angeles. The City has been on notice for more than a year that this was occurring and failed to take action to end the unlawful practice. The challenged practice is so widespread in the LAPD's Central Division that the City cannot deny knowledge of the practice.

5. LAPD officers and BID officers, operating together under color of law and with complete disregard for the constitutional rights of the vendors, seize their property, including not only perishable goods like fruit and ice cream, but also shopping carts, dollies, coolers, umbrellas, utensils cutting boards, and sometimes the

1

personal property that is with the vendors' goods. While the vendors are forced to stand aside, often under threat of citations or arrest, these officers summarily throw the vendors' property into the back of a BID trash truck and haul it away, giving the vendors no opportunity to get the items back, and leaving them no recourse against them.

6. The officers who seize and destroy the vendors' property do so with no warrant or legal justification, and without affording the vendors any pre- or post-deprivation due process at all. The seizure and destruction of the vendors' property serves no legitimate government purpose and is patently unreasonable. Instead of affording the vendors rights or following established protocols, the officers seize and destroy the property as a sort of extrajudicial street punishment, meted out against the vendors as the officers see fit. The LAPD and BID act with no judicial oversight and without affording the vendors any way to challenge this punishment or seek the return of their unlawfully seized property before it is discarded or destroyed.

7. Because of the officers' complete disregard for the vendors' rights, the individual and organizational plaintiffs have no choice but to bring this fight into the Courtroom, and to seek this Court's assistance to put an end to these illegal practices.

## PLAINTIFFS

8. Plaintiff Unión Popular de Vendedores Ambulantes ("Unión") is a member-based unincorporated organization in Los Angeles that fights to protect street vendors, organizes them to advocate for legalization of street vending, and educates them on the laws and rules that affect them. Unión was founded in 2013, and currently has approximately 80 members that participate in two chapters in the Fashion District and MacArthur Park neighborhoods of Los Angeles. Unión holds weekly meetings for its nine-member Coordinating Community, and monthly General Assembly meetings at which all members have the right to discuss issues related to street vending, including interactions with law enforcement and the BIDs, and vote on decisions. Since its inception, Unión has advocated for the legalization of street

vending through meetings with City Council members, members of the Los Angeles Board of Supervisors, LAPD management, and Los Angeles Sheriff's Department management, and the creation of a community market in the MacArthur Park neighborhood.  Unión has also organized community festivals in the MacArthur Park neighborhood, and educational workshops for its members on topics such as tenants' right.  LAPD and BID officers have illegally seized and destroyed the property of Unión's members, without due process, and consistent with LAPD and BID custom, policies and practices.  Unión has had to divert limited organizational resources to help members who have been subjected to these illegal practices, including by assisting vendors to seek the return of their confiscated property and by meeting with police and City and County officials to advocate for a cessation of these enforcement practices.  As a result of these ongoing practices, Unión is forced to spend time and resources on addressing these confiscations, rather than dedicating the time and resources to furthering other aspects of its  organizational mission, such as the legalization campaign and holding educational events.  Unión brings this action on behalf of itself and its members.

9.     Plaintiff Aureliano Santiago is a street vendor who sells ice cream on the streets in Los Angeles.  He has been cited for street vending and had his property confiscated on five or six occasions in the Fashion District.  Each time his property is confiscated, it creates a financial hardship for him and his family, who depend on Mr. Santiago to provide for them, pay rent and bills, and contribute to his daughter's college tuition.  Mr. Santiago is an active member of Unión and regularly attends its meetings. As a Unión member, he has participated in meetings with representatives of the LAPD, the Mayor's office, and other public officials, all to advocate for an end to these unlawful seizures.

10.     Plaintiff Wendy Puluc is a street vendor who lives in Los Angeles and sells fruit in the Downtown area of Los Angeles.  She relies on her income to support herself and her two children.  Ms. Puluc has had her cart, fruit, umbrella, and other

3

equipment taken by LAPD and the FDBID security officers on at least four occasions, and each time, she has lost all of her belongings. She has never been given an opportunity to retrieve the items or contest their confiscation. The confiscation and destruction of her property creates an economic hardship for Ms. Puluc and her family. Ms. Puluc is an active member of Union. She regularly participates in meetings of the Union, and has attended actions to protest LAPD's practices.

## DEFENDANTS

11. Defendant the City of Los Angeles (City) is a municipal entity organized under the laws of the State of California. The City is a legal entity with the capacity to sue and be sued. The departments of the City of Los Angeles include the LAPD, employees of which engage in the acts constituting the violations of plaintiffs' rights alleged in this action. The City also created the Fashion District BID and has authorized and/or ratified all of the actions of the Fashion District BID alleged herein.

12. Defendant Fashion District BID is a Business Improvement District initially created by the City of Los Angeles in 1998, pursuant to California Streets and Highways Code Section 36600 *et seq*, and last renewed in 2013. *See* Los Angeles Municipal Ords. 172180, 182651. The Fashion District BID is funded by the City of Los Angeles through an assessment on property owners located within the BID, and the purpose of the BID, as outlined in the current Management District Plan, is to provide increased municipal services to those properties, including primarily safety and maintenance services.

13. Defendant Downtown Los Angeles Property Owners Association, Inc., ("the Owner's Association") is a 501(c)(6) not-for-profit business corporation contracted by the City of Los Angeles to manage the Fashion District BID. The Owner's Association maintains offices in the City of Los Angeles. The Fashion District BID and the Owner's Association act as agents of the City and have conspired with the City to violate plaintiffs' rights.

4

14. Officer Linton is an officer with LAPD and is sued in her official and individual capacities. She was and continues to be an officer in the Central Division of LAPD at all relevant times in this complaint.

15. Each of the defendants acted as joint actors with joint obligations, and each defendant was and is responsible for the conduct and injuries herein alleged.

16. Each of the defendants acted, alone or together jointly, under color of law. The City has delegated traditional municipal functions, including additional sanitation and security services, to the Fashion District BID, through the adoption of ordinances and pursuant to state law as well as through the direct delegation to BID officers in the course of performing their duties. The Owner's Association, acting as an agent of the Fashion District BID, performs those municipal functions at the direction and behest of the City and with the presence and authority of the LAPD.

## ALLEGATIONS

17. In Downtown Los Angeles, a series of Business Improvement Districts (BIDs) cover seven districts that correspond roughly to neighborhoods downtown: the Arts District, Bunker Hill (Downtown Center), the Historic Core, Skid Row (Los Angeles Downtown Industrial District), South Park, Little Tokyo, and the Fashion District.

18. The Fashion District BID was the first BID created in Los Angeles. It covers the area known as the Fashion District because of the large number of wholesale clothing stores, garment factories, and fabric retailers in the area.

19. The Fashion District BID consists of approximately 90 blocks in the southern central area of downtown Los Angeles bounded on the west by Main Street, Broadway and Spring Street; on the North by 8th Street, 7th Street, 6th Street and 9th Street; on the east by San Pedro Street, Towne Avenue, Stanford Avenue, Griffith Street and Paloma Street; and on the south by 17th Street and 18th Street. The BID also covers Santee Alley, known for its bargain shopping and bazaar-like atmosphere.

5

20. Like all of the BIDs in Downtown Los Angeles and throughout the City, the Fashion District BID is created and overseen by the City of Los Angeles pursuant to state and municipal law and is funded by assessments levied on property owners in the district. The Fashion District BID employs a team of maintenance and safety officers to provide services that ordinarily would be provided by the Bureau of Sanitation and the LAPD. The Fashion District officers wear yellow shirts to distinguish them from other BID officers in other districts and are known colloquially as "yellow shirts."[1]

21. The Fashion District BID officers support and work in concert with, and at the direction of, the LAPD to extend the reach of the LAPD in the Fashion District. They supplement ongoing police patrol efforts within the District. They maintain communication with the LAPD area patrols, and work with the LAPD to deter and conduct enforcement actions against street vendors.

22. In performing these tasks, LAPD and BID officers have a custom and practice of violating the constitutional rights of vendors. Working together, LAPD and BID officers seize and destroy the personal property of individuals who they suspect are selling merchandise and food on the streets of the Fashion District. They do so with no warrant or other legal justification for the seizures, and the vendors are afforded absolutely no due process before or after the seizures and no notice before the property is destroyed or sold. The taking of the vendors' property is done with total disregard for the vendors' Fourth, Fifth and Fourteenth Amendment rights.

23. On information and belief, when LAPD happens upon a street vendor in the Fashion District, officers contact the Fashion District BID, who in turn dispatch members of its safety and clean teams to seize and destroy the vendor's property.

---

[1] Other BIDs are known by the color of their shirts: Los Angeles Downtown Industrial District officers are known as "red shirts," Downtown Center are "purple shirts," Arts District are "blue shirts." BID officers in the Historic Core and South Park wear green shirts.

6

24. After LAPD contacts the Fashion District BID, BID officers arrive on the scene prepared to dispose of the property. The Fashion District BID employs a fleet of trucks used to carry away trash and seized property.

25. In other instances, the BID officers first come across street vendors and contact the LAPD, which will dispatch its own officers to the scene. The LAPD officers sometimes cite and arrest vendors while the BID officers seize and dispose of the vendors' personal property. At other times, LAPD officers will threaten vendors with citation or arrest if they do not allow the property to be confiscated. LAPD officers stand by while the BID officers seize and dispose of the vendors' property.

26. LAPD and BID officers also routinely verbally harass the street vendors and insult them, and, on occasion, threaten them with deportation if the vendors protest the seizure of their property.

27. Regardless of whether LAPD calls the BID officers or the BID officers contact LAPD, and irrespective of whether the vendor is cited, arrested, or merely threatened with citation or arrest, BID officers take and dispose of the property, and they do so at the instruction or with the support of LAPD officers.

28. When the BID officers seize the vendors' property, the vendors are given no opportunity to retrieve it after it is taken. They are not informed that they can contest the seizure, or that their property will be stored. They are not given a receipt for the property that is taken. They are not told where the property is being taken and how they can reclaim it. When the vendors are detained by LAPD, they must stand aside and watch their property be taken and destroyed. If they are not detained, the presence of law enforcement and the threat of criminal prosecution ensures that the vendors not interfere while their property is seized.

29. The property is not seized pursuant to a warrant, nor is it being seized for safekeeping. The property is seized and destroyed even if the vendors are not arrested and booked into custody, and even if there are individuals present whom the owner could authorize to take possession of their property.

30. The property is not seized as evidence of a crime: it is not inventoried or booked into evidence as required by LAPD policy, nor is it used as evidence against the vendor, who may be charged with violations of the Los Angeles Municipal Code and subsequently prosecuted for those violations. Instead, the property is summarily thrown into the back of the BID trash truck and, then thrown away or disposed of.

31. The seizures are not consistent with an LAPD Special Order, issued in 2006 by the then-Commanding Officer of the Risk Management Group, Commander Stuart Maislin, and the then-Commanding Officer of the Consent Decree Bureau and the Special Assistant for Constitutional Policing, Gerald Chaleff, and given to all members of the LAPD. The order requires that all seizures of property must comply with LAPD Department Manual Section 5/510.10 ("Manual"), which mandates that seized non-perishable property be booked and inventoried on a Property Report Form.

32. The 2006 notice emphasizes that the requirement to book and inventory seized property, including non-evidence property, applies not only when an individual is arrested, but also to situations in which an individual is detained. In those instances, personal property must be returned immediately after the detention ends. Despite the clear directives in the 2006 notice and the Manual, Defendant City and the individual defendant officers have subverted their legal obligations by directing and authorizing the seizure and immediate destruction of the vendors' property by the BID officers, facilitating this unlawful process by threatening citations or arrest if the vendors attempt to save their property.

33. The property seizures are inconsistent with well-established constitutional principles. Defendants have long been on notice that these actions are illegal and that they may not seize property and destroy property without legal justification, and without providing pre- and post-deprivation notice and an opportunity to reclaim ownership of lawfully-confiscated property. The violation of Plaintiffs' rights is all the more offensive in this instance in light of an existing

8

injunction issued against Defendant City for such actions in *Lavan v. City of Los Angeles*, 11-cv- 11-02874 PSG (AJWx).  *Lavan* is only the most recent injunction issued against Defendant City for the unlawful seizure and destruction of the personal property of low-income individuals with first providing pre- and post-deprivation notice and an opportunity protect such personal property.

## RECENT INCIDENTS

34.  On or about the afternoon of August 29, 2015, Plaintiff Puluc was on Maple Street and Olympic Boulevard in Downtown Los Angeles, which is located within the Fashion District Business Improvement District.  Ms. Puluc had a cart with an umbrella, fruit trays, fresh fruit, and other equipment to prepare the fruit.

35.  As Ms. Puluc was preparing the fruit, FDBID officers wearing yellow shirts approached Ms. Puluc and, without saying anything to her, grabbed her cart and fruit trays.  Officer Linton was also present, and as she stood by, the FDBID officer confiscated all of Ms. Puluc's belongings, including the cart, trays, utensils, uncut fruit and her umbrella, and threw them in the BID's truck.  Prior to seizing her property, neither Officer Linton nor the FDBID officers questioned Ms. Puluc, or inspected or inventoried the property.

36.  Neither the BID officers nor Officer Linton provided Ms. Puluc with a receipt or any documentation regarding the items that were seized.  They did not inform her whether or how she could retrieve the items.  Without any information about how to get the items back, she had no way to contest the confiscation or get them back.  To date, she has never gotten back any of the items that were taken that day.

37.  On or about the afternoon September 12, 2015, Plaintiff Aureliano Santiago, other members of Unión, and other vendors were on Maple Street between 11th and 12th Street when BID officers descended on the group.  At the time, Mr. Santiago was selling individually wrapped ice cream products and other frozen

9

desserts from his cart.  The officers arrived on bike and foot and surrounded a number of vendors, including Mr. Santiago.  The BID officers positioned their bikes to prevent the vendors, including Mr. Santiago, from accessing their property or removing it from the area.  On information and belief, the BID officers contacted the LAPD.  Officer Linton and another officer arrived shortly thereafter.

38.   Working together, the LAPD officers blocked the vendors from accessing their property and threatened them with arrest while the BID officers seized their carts, dollies, umbrellas, utensils, coolers and perishable items and dumped their property into the back of the Fashion District BID's trash truck and pickup truck.  Neither the LAPD officers nor the FDBID officers inspected or inventoried the property prior to seizing it.

39.   None of the vendors were given receipts for their property.  No efforts were made to identify to whom the property belonged.  None of the vendors were told where the property was being taken or how they could reclaim it.

40.   The experiences of the individual Plaintiffs are not isolated.  Numerous other vendors and members of Unión have faced similar unlawful confiscations.

41.   On or about August 21 2015, near 12th Street and Maple Street in the Fashion District, vendor and Unión member Maria del Rosario Caal was selling fruit from her cart.  At approximately 12:30 p.m., Officer Linton approached Ms. Caal and informed her that selling fruit there was not permitted and that all of her property would be thrown away.  Ms. Caal asked the officer if she could leave, but Officer Linton informed her that she could not, and that she was going to be given a ticket for illegal street vending.  Ms. Caal asked that she be able to keep her property, but the officer refused and repeated that it would all be thrown away.

42.   While Officer Linton was writing the citation, she made a phone call; on information and belief, the call was to the Fashion District BID. Approximately five minutes later, about five BID officers in yellow shirts arrived at the scene.  LAPD Officer Linton instructed the BID officers to seize and dispose of Ms. Caal's

property, including not only the fruit, but also her cart, her utensils, gloves, and other items. The BID officers threw Ms. Caal's property in the back of their truck.

43. Ms. Caal was detained while Officer Linton wrote a citation and her property was trashed. After she was given the citation, Ms. Caal was permitted to leave the scene. She was not given a receipt for the property that was taken or informed in writing or orally of the location to which her property was being taken or a process to retrieve any of her property.

## ATTEMPTS TO RETRIEVE CONFISCATED PROPERTY

44. On or about September 21, a number of street vendors who had been cited by the LAPD and had their property taken by the BID officers, including Mr. Santiago and other members of Unión, went to the LAPD Central Division to file police personnel complaints against the LAPD officers who were responsible for the seizure of their property. Mr. Santiago attended that day and made a report to Internal Affairs against Officer Linton and others in the department. An Internal Affairs officer took Mr. Santiago's complaint, but stated that officers were "just doing their job" by citing street vendors and confiscating their property.

45. On September 22, 2015, another group of vendors, including Mr. Santiago and other members of Unión, went to the Fashion District BID to try to get the BID to return their property. The vendors spoke to a BID manager who informed them that the BID was working with the LAPD and that the BID seized vendors' property at the direction, and with the authorization of, the LAPD. The manager indicated that the BID retained some of the dollies that had been taken from street vendors, although it was not clear when these dollies were taken or to whom they belonged. The vendors were shown some of the seized property. Mr. Santiago's property was not among the dollies that were produced. The manager also indicated that the BID had turned over other carts, utensils and perishables to the police department. However, on information and belief, the BID has simply thrown away this property, along with other property it seized that day.

11

# FIRST CAUSE OF ACTION
### Right to Be Secure From Unreasonable Seizures
### 42 U.S.C. §1983 - Fourth Amendment;
### Art. 1, §13, California Constitution
### Against All Defendants

46. Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through as 46 as though fully set forth herein.

47. Plaintiffs have a vested interest in their property pursuant to state constitutional and statutory law. Defendants violated plaintiffs' Fourth Amendment right to be free from unreasonable seizure of their property by seizing and then discarding plaintiffs' property without a warrant and without any legal justification to do so.

48. Defendants' unlawful actions, through the conduct of their employees, were done with the specific intent to deprive plaintiffs of their constitutional rights to be secure in their property. None of the property seized from plaintiffs was contraband or otherwise unlawful to possess.

49. Plaintiffs are informed and believe that Defendants' employees and agents were intentional in failing to protect and preserve their property, and that, at a minimum, the City was deliberately indifferent to the likely consequence that the property would be seized and destroyed unlawfully, based on the past circumstances of similar constitutional and statutory violations.

50. As a direct and proximate consequence of the acts of defendants' agents and employees, plaintiffs Aureliano Santiago and Wendy Puluc has suffered and continues to suffer injury and loss. Mr. Santiago and Ms. Puluc are entitled to compensatory damages for the loss of and damage to property and other injuries to their persons that resulted from the violation of their Fourth Amendment and analogous state constitutional rights.

51.     Plaintiffs are also entitled to injunctive relief prohibiting defendants from unreasonably seizing and destroying their property in the future. Plaintiffs are informed and believe that unless restrained from doing so, defendants will continue to engage in said wrongful conduct for which plaintiffs have no adequate remedy at law. Unión's mission is still frustrated by these policies and practices, and they continue to divert resources as a result of these policies and practices. Unión's members, who continue to vend in the Fashion District BID, are still harmed by these practices. The practices detailed in the preceding paragraphs will continue to violate their constitutional rights.

**SECOND CAUSE OF ACTION**
**Right to Due Process of Law**
**42 U.S. C. §1983, Fifth and Fourteenth Amendments;**
**Art. I, §7 Calif. Constitution**
**Against All Defendants**

52.     Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 46 as though fully set forth herein.

53.     Defendants owed plaintiffs a duty under the due process clause of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, sec. 7 of the California Constitution.

54.     Defendants provided plaintiffs with no notice that their property was at risk of being seized and/or destroyed. Even when defendants were specifically put on notice that the property was not abandoned and given an opportunity to stop the seizure of plaintiffs' personal items, defendants proceeded with the seizure and the immediate destruction of the property, denying Plaintiffs any pre- or post-deprivation due process to contest the seizure of their property or seek its return.

55.     Plaintiffs are informed and believe that defendants' employees and agents are seizing property intentionally without a lawful justification, or, at least,

13

defendants were deliberately indifferent to the likely consequence that the property would be seized and destroyed without lawful justification and without due process.

56. As a direct and proximate consequence of the acts of defendants' agents and employees, plaintiffs have suffered and continue to suffer injury and loss. Plaintiff Santiago is entitled to compensatory damages for the loss of and damage to property and other injuries to his person that resulted from the violation of his Fifth and Fourteenth Amendment rights.

57. Plaintiffs are also entitled to injunctive relief prohibiting defendants from seizing and summarily destroying their property in the future without due process. Plaintiffs are informed and believe that unless restrained from doing so, defendants will continue to engage in said wrongful conduct for which plaintiffs have no adequate remedy at law. Unión's mission is still frustrated by these policies and practices, and they continue to divert resources as a result of these policies and practices. Unión's members, who continue to vend in the Fashion District, are still harmed by these practices. The practices detailed in the preceding paragraphs will continue to violate their constitutional rights.

## THIRD CAUSE OF ACTION
### Violation of Civil Rights: Interference By Threat, Intimidation or Coercion
### California Civil Code § 52.1

58. Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 46 as though fully set forth herein.

59. Defendants' agents and employees have used threats of arrest and intimidation to interfere with plaintiffs' rights secured by the Constitution of the United States, the Constitution of the State of California, and the statutory laws of the State of California.

60. Plaintiffs are entitled to an injunction pursuant to California Civil Code § 52.1. Plaintiffs are informed and believe that unless restrained from doing so, defendants will continue to engage in said wrongful conduct for which plaintiffs have

1 | no adequate remedy at law. Plaintiffs are also entitled to damages pursuant to Civil
2 | Code §§ 52 and 52.1.

    **WHEREFORE**, plaintiffs pray as follows:

    1. For a preliminary injunction and a permanent injunction, enjoining and restraining defendants from engaging in the policies, practices and conduct complained of herein;

    2. For a declaratory judgment that defendants' policies, practices and conduct as alleged herein violate plaintiffs' rights under the United States Constitution, the California Constitution and the laws of California;

    3. For plaintiffs Aureliano Santiago and Wendy Puluc, damages in an amount to be determined according to proof for violation of their constitutional rights, lost property and for pain in suffering, all in accord with Cal. Civ. Code §§ 52, 52.1 and Cal. Government Code § 815.6.

    5. For costs of suit and attorney fees as provided by law;

    6. For such other relief as the Court deems just and proper.

Dated: September 9, 2016    Respectfully submitted,

        Legal Aid Foundation of Los Angeles
        ACLU Foundation of Southern California
        National Lawyers Guild – Los Angeles
        Schonbrun, Seplow, Harris & Hoffman

          /s/ Carol A. Sobel
        By: CAROL A. SOBEL
        Attorneys for Plaintiffs